UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JAMES KOTROUS, individually
and doing business as THE
MATTRESS FACTORY,

NO. CIV. S-02-1520 FCD JFM

      Plaintiff,

  v.                             ORDER

GOSS-JEWETT COMPANY OF
NORTHERN CALIFORNIA, INC., et
al.,

      Defendants.

----oo0oo----

This matter is before the court on motion to dismiss filed by defendant Bayer Cropscience, Inc., ("Bayer"). The motion seeks dismissal of the First, Third and Fourth Claims in Plaintiff, James Kotrous' ("Kotrous") First Amended Complaint for failure to state a claim on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). In the event the court grants this motion, Bayer requests that the court decline to exercise supplemental jurisdiction over Kotrous' remaining state law

1

claims.  For the reasons stated herein, Bayer's motion is DENIED.[1]

**BACKGROUND**

The instant litigation concerns certain real property located at 4301 Power Inn Road in Sacramento, California ("the Site").  From approximately 1970 until 1996, the Site was leased by Goss-Jewett Company of Northern California ("Goss-Jewett"), a defendant in this action.  (First Amended Complaint ("FAC") ¶ 8.)  Goss-Jewett sold and distributed chemicals used by dry cleaning establishments, including the chemical perchloroethylene ("PCE").

As part of its operations at the Site, Goss-Jewett installed an above-ground storage tank, which was used to store up to 1,000 gallons of PCE prior to its delivery by truck to local dry cleaning businesses.  Stauffer Chemical, a predecessor in interest to Bayer, supplied PCE to Goss-Jewett and delivered it by truck to the storage tank.  (FAC ¶ 39.)  During one or more of these deliveries, Stauffer Chemical "suddenly and accidentally released PCE to the soil and groundwater at the site . . . [resulting in] contamination of the environment."  (FAC ¶ 40.)

During the period that Goss-Jewett operated its dry cleaning chemical supply business, ownership of the Site transferred on two occasions.  From approximately 1968 to 1976, Albert and Estelle Evans, Esther Volz, Robert and Frances Carmany, and John

/////
/////

---

[1] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. Local Rule 78-230.

2

and Mildred Spurlock co-owned the Site.[2]  In 1976, ownership transferred to defendant Edward Anselmo ("Anselmo"), who sold the Site to Kotrous in October of 1995.

In August of 1996, after Kotrous acquired ownership of the Site, hazardous substance contamination was discovered in soil beneath the storage tank.  (FAC ¶ 41.)  In 1998, Goss-Jewett conducted a well survey, which identified 35 water wells within 2,000 feet of the Site, including one private well used for domestic water supply.  (FAC ¶ 42.)  Goss-Jewett then sampled the private well and found it contained heightened levels of PCE.  (Id.)  The well was removed from service.  (Id.)

In or about February of 2000, the California Regional Water Quality Control Board ("CRWQCB") sent Goss-Jewett a letter requesting a work plan for site assessment and evaluation of groundwater monitoring wells on property down-gradient from the Site.  (FAC ¶ 43.)  However, Goss-Jewett did not comply and has performed no further work at the Site since it sampled the domestic well in June of 1998, despite repeated requests by the CRWQCB.  (Id.)

In November of 2001, the CRWQCB issued Cleanup and Abatement Order No. 5-01-714, which required Goss-Jewett and one of its officers, defendant Steven Lamanet ("Lamanet"), to investigate and remediate soil and groundwater contamination at the Site.  (FAC ¶¶ 9, 44.)  Kotrous was directed to conduct the work if Goss-Jewett and Lamanet failed to do so.  (FAC ¶ 44.)

---

[2] According to the FAC, Albert Evans, Estelle Evans, Esther Volz, Robert Carmany, Frances Carmany, and John Spurlock are deceased.  Their respective estates have been named as defendants in this action.

When Goss-Jewett and Lamanet failed to comply with deadlines in the first Cleanup Order, the CRWQCB rescinded that order and issued Cleanup and Abatement Order No. R5-2002-0707, which imposed obligations for site investigation and cleanup on Kotrous, Anselmo and Goss-Jewett.  (Id.)

Kotrous commenced this action on July 15, 2002, asserting claims for contribution under CERCLA and the California Hazardous Substance Account Act; declaratory relief under CERCLA, 42 U.S.C. § 9613(g)(2), the Declaratory Judgment Act, 28 U.S.C. § 2201, and state law; public and private nuisance; trespass; equitable indemnity; and injunctive relief.  On April 26, 2005, Bayer filed the instant motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[3]

**STANDARD**

Rule 12(c) provides in relevant part that,

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

A defense of failure to state a claim upon which relief can be granted may be made by motion for judgment on the pleadings.  Rule 12(h)(2).  In considering a motion for judgment on the pleadings presenting a defense of failure to state a claim upon which relief can be granted, this court should employ those standards normally applicable to a motion to dismiss for failure

---

[3] All further references to the "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

4

1  to state a claim upon which relief can be granted pursuant to
2  Rule 12(b)(6).  5A Wright & Miller, Federal Practice and
3  Procedure, Civil § 1367 at 515-16 (2d ed. 1990).

4     On a motion to dismiss, the allegations of the complaint
5  must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322
6  (1972).  The court is bound to give the plaintiff the benefit of
7  every reasonable inference to be drawn from the "well-pleaded"
8  allegations of the complaint.  Retail Clerks Int'l Ass'n v.
9  Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Given that the
10 complaint is construed favorably to the pleader, the court may
11 not dismiss the complaint for failure to state a claim unless it
12 appears beyond a doubt that the plaintiff can prove no set of
13 facts in support of the claim which would entitle him or her to
14 relief.  Conley v. Gibson, 355 U.S. 41, 45 (1957); NL Indus.,
15 Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

16    Nevertheless, it is inappropriate to assume that plaintiff
17 "can prove facts which it has not alleged or that the defendants
18 have violated the . . . laws in ways that have not been alleged."
19 Associated Gen. Contractors of Cal., Inc. v. Cal. State Council
20 of Carpenters, 459 U.S. 519, 526 (1983).  Moreover, the court
21 "need not assume the truth of legal conclusions cast in the form
22 of factual allegations."  United States ex rel. Chunie v.
23 Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

**ANALYSIS**

25    Bayer contends that Kotrous' First Claim for contribution
26 under CERCLA must be dismissed because Kotrous is not entitled to
27 assert a claim under either of the two sections of CERCLA which
28 authorize private actions for damages, § 107(a) and § 113(f).

5

Section 107(a) of CERCLA authorizes private entities to recover costs incurred in cleaning up hazardous waste disposal sites from responsible parties ("PRPs") as defined in the statute. 42 U.S.C. § 9607(a).

Section 113(f), which Congress added to CERCLA through the 1986 Superfund Amendments and Reauthorization Act ("SARA"), provides PRPs with an express right to contribution from other responsible parties. Under § 113(f), a responsible party may seek contribution, (1) "during or following any civil action under § 106 of this title or under § 107(a) of this title" or (2) where the PRP "has resolved its liability to the United States or a State for some or all of a response action . . . in an administrative or judicially approved settlement." 42 U.S.C. § 9613(f).

In Cooper Indus., Inc. v. Aviall Serv., Inc., 125 S. Ct. 577, 583 (2004), the Supreme Court held that a PRP who "voluntarily" incurs response costs (i.e., is not subject to a civil action under § 106 or § 107 and who has not entered into an administrative or judicially-approved settlement) cannot assert a claim for contribution under § 113(f). The court found that the clear language of the statute precluded any contrary result. Id.

Bayer contends that, in light of the Supreme Court's decision in Aviall, Kotrous cannot maintain a CERCLA contribution claim under § 113(f) because he was not subject to a civil action under § 106 or § 107(a), nor did he enter into a settlement with the federal or state government. The court need not decide whether the Kotrous could meet § 113(f)'s standing requirements because the Ninth Circuit recognized an implied right of

6

1 contribution in § 107.  Pinal Creek, 118 F.3d 1298, 1301 (citing
2 Key Tronic Corp. v. United States, 511 U.S. 809, 814-815 (1994)
3 and Mardan Corp. v. C.G.C. Music, Ltd., 804 F.2d 1454, 1457 n.3
4 (1986)); Western Props. Serv. Corp. v. Shell Oil Co., 358 F.3d
5 678, 685.  The enactment of § 113 in 1986 did not replace the
6 implicit right of contribution in § 107.  Western Props., 358
7 F.3d at 685.  SARA contained a savings clause, which provides
8 that "[n]othing in this subsection shall diminish the right of
9 any person to bring an action for contribution in the absence of
10 a civil action under section 9606 of this title or section 9607
11 of this title." 42 U.S.C. § 9613(f)(1) Thus, under controlling
12 Ninth Circuit precedent, a PRP may maintain a claim for
13 contribution under § 107(a).

14     Bayer's argument that Kotrous' status as a PRP bars him from
15 seeking *any* relief under § 107(a) is based on a mistaken
16 interpretation of Ninth Circuit's decision in Pinal Creek. Pinal
17 Creek held only that a PRP cannot maintain an action under §
18 107(a) *for joint and several liability*.  Pinal Creek, 118 F.3d at
19 1302 (concluding that the PRP plaintiff was "foreclosed from
20 imposing joint and several liability [on other PRPs] . . ..")
21 However, nothing in Pinal Creek suggests that the court intended
22 to abrogate its prior decisions finding an implied right to
23 contribution in § 107(a).  To the contrary, Pinal Creek clearly
24 recognizes that § 107 incorporates such a claim.[4]  Id. at 1301

---

[4] The Court in Aviall expressed considerable skepticism regarding whether courts should find an implied right to contribution in § 107.  See Aviall, 125 S. Ct. at 586 (noting that "[t]o the extent that Aviall chooses to frame its § 107
(continued...)

7

1  (finding that a claim for contribution is implicitly embedded in
2  the text of § 107); <u>Western Props.</u>, 358 F.3d at 685.
3       Kotrous' First Claim for contribution expressly invokes §
4  107(a).  (<u>See</u> FAC ¶¶ 47, 49, 56.)  Thus, Kotrous has stated a
5  claim for contribution under CERCLA.

## CONCLUSION

7       For the reasons stated herein, Bayer's motion to dismiss
8  Kotrous' First Claim for contribution under CERCLA is DENIED.
9  Bayer's motion to dismiss Kotrous' Second through Fourth Claims
10 is predicated on this court dismissing Kotrous' CERCLA claim.
11 Accordingly, Bayer's motion to dismiss is DENIED in its entirety.

13      IT IS SO ORDERED.
14 DATED: June 16, 2005.

                                  /s/ Frank C. Damrell Jr.
                                  FRANK C. DAMRELL, Jr.
                                  UNITED STATES DISTRICT JUDGE

---

[4](...continued)
claim on remand as an implied right of contribution (as opposed
to a right of cost recovery) we note that this Court has visited
the subject of implied rights of contribution before," and citing
cases rejecting the creation of such rights).  However, the
<u>Aviall</u> Court expressly did not decide this issue.  <u>Id.</u> (". . . we
decline to decide whether <u>Aviall</u> has an implied right to
contribution under § 107.").  Because <u>Aviall</u> does not overrule
the cases from this circuit that recognize an implied right to
contribution in § 107, they remain good law and are binding on
this court.

8